The President
delivered the opinion of the Court.
However it might appear to the Chancellor, this Court has no doubt, but that the answer is fully disproved by more than two witnesses, who make it evident, that by the original agreement, before the work was begun, Mr. Dandridge was to have the alternative, and that, at the time of signing the agreement, he refused his signature, until Harris promised to make the indorsement allowing him that privilege. The alternative is an important part of the contract, since it might make a considerable difference to the appellant, whether he should give up his property at a fair valuation, or be obliged to part from it under an execution, at three-fourths of its value, or, if he replevied, to have it finally sold, perhaps'at a much greater loss.
It appears, that in the action at Common Law, brought by Harris upon the agreement, the jury found a special verdict, stating the above facts, as set forth in the bill. The appellee excepted to the opinion of the Court, permitting the appellant to give parol evidence of those facts, and the judgment, which was in favor of the appellant, ivas reversed in the District Court, on account of the parol evidence having been admitted. Whatever might be the decision of a Court of Law, upon the propriety of admitting such proof to contradict a written agreement, there can be no doubt in Equity, but that the appellee refusing to make that indorsement, upon his promise to do which, the agreement was signed, and availing himself of that agreement as an absolute one, which in fact was only conditionally executed, he was guilty of a fraud, against which the Court will relieve, by considering the indorsement as made, and incorporated into the agree *424 ment. The case of Walker v. Walker, 2 Atk. 98, which was read at the bar, does not apply; there was no written agreement in that case, and the question was> whether the parol evidence of it could be admitted, under the Statute of Frauds and Perjuries. But there is a case there, put by the Chancellor, which does apply. He supposes a person, advancing money, and taking an, absolute conveyance, to which, by agreement, there was to be a defeasance, and the other party refusing to execute the defeasance. He puts the question; will not this Court relieve against such a fraud? A strong manner-of declaring his opinion that it would, and it is very much like the case before the Court. Considering the indorsements then as made, the Court proceed to consider what would have been the effect of it at Law. The defendant, at Law, might have pleaded the special matter, that he was always ready to deliver property ; that the plaintiff had neglected to name a person to value it, though he had promised to do so, and had refused to receive the property ; which plea would have been supported by the proofs in the cause. But for want of this indorsement, the defendant was probably, advised that he could not plead this matter, it being dehors the agreement, and therefore he pleaded conditions performed. It is true, the Court permitted him at the trial, to give evidence of those facts ; and if the jury had upon that evidence decided against him, it would be reasonable that he should be bound thereby, since he would have had a fair trial upon the merits, as much so, as if the indorsement had been made. But that is not the case. The jury found matter sufficient to excuse him, and the County Court gave judgment in his favor, which the District Court reversed, the ground of which reversal appears in the exceptions to have been, the admission of the parol evidence; so that the appellee has committed a fraud in withholding the indorsement, and has then availed himself of it, by a legal objection, founded upon the want of that indorsement. If this be not a proper case for relief in Equity, we are at a loss to know how one can exist.
*425 It was then objected, that suppose the indorsement made, it was the duty of Mr. Dandridge to tender property immediately, or else he lost the benefit of the alternative. This case from its nature, is very different from the common one of a debtor, owing money, who is obliged to seek his creditor in order to pay the debt. Here property was to be delivered, which could not so easily be conveyed from place to place as money, and it would be natural to suppose, that it was to be valued and received at the defendant’s house; and die rather so, as being more convenient to him, in the selection of property which might have taken place. That an actual tender of property was made prior to that made at Johnson’s in November 1787, after the suit was brought, does not appear. And if it had stood upon that alone, the Court would have considered Mr. Dandridge as having failed in performing his part of the agreement, and consequently that he had forfeited the alternative. But the fact appears to be, that, on the 16th of December, 1786, (the very day the work was finished,) they settled their accounts, and fixed the balance at 48/., Mr. Harris called upon Mr. Dandridge to sign the account, which he refused to do, unless Harris would state that property was to be paid; a circumstance which he constantly adhered to as a part of the original agreement. He then desired Harris to come to him with the writing, and to join in naming persons to value the property, and to receive it, which Harris promised to do the next day, or the day after, but did not. Mr. Dandridge then wrote a letter to the father and son, requesting them to come and have the property valued. They did not object, that the property should be carried to them, but declared they would not receive property, and in February 1787, only forty-one days from the time the work was finished, and before Mr. Dandridge could probably have time to make a legal tender, Harris brought his suit.
Upon this view of the case, although Mr. Harris appears to have done his work honestly, and is entitled to his stipulated reward, vet since he has been delayed *426 by what this Court calls a fraud in him, and by his to use that fraud to the disadvantage of the other pary, he stands in a very different point of view, in Equity, from Mr. Dandridge, whose conduct through the whole transaction appears to have been fair and upright, at all times willing to perform his real agreement.
The Court have to lament the expenses which have been incurred on the occasion, but are of opinion that they ought to fall upon Mr. Harris, the party in fault, who is adjudged to pay the whole costs at Law and in Eqnity.
It is objected that the Court cannot decree a specific execution in this case, because the valuers were to be named by the parties, and as they did not name them, it is contended that the Court cannot do it for them. In the cases of Pleasants, Shore & Co. and Anderson v. Ross, (ante, p. 156,) and Smallwood v. Hansborough, (ante, p. 290,) the parties named the valuers in their agreement, and it was decided that others could not be substituted in their stead, upon their refusing, in the one case, to act, and in the other, not having perfected what they were to do. In this case, no persons were named, so as to shew a personal confidence, but a description of their character only; they were to be honest men ; and it is supposed, that if the parties should refuse to name, the Chancellor might easily find two men in the State to answer the description. The Court are also of opinion, that the Chancellor might appoint a day, before which the parties should name the valuers, or in case either refused, might direct it to be done by two honest men appointed by himself, to value the property, (negroes excepted,) and upon delivering, or tendering the property so valued, to the amount of 48/., the injunction to be perpetual.
But as there is difficulty in such a decree, which may be delayed, if not defeated, by the valuers, whether chosen or appointed, refusing to act; and since the appellant, coming into Equity, must do Equity; and it appearing that he has parted with the property *427 In the mare, which in his bill he suggests to have been accepted by Harris, at 45/., and to have been kept for him by the appellant; and the appellant having declared, before bringing this suit, that he intended to pay the money, and only contended for the costs, the Court is of opinion that the judgment at Law ought to remain in force as to the 48/., and be enjoined as to the costs.
We therefore reverse the Chancellor’s decree with costs. The injunction to be made perpetual as to all the costs at Law: and to be dissolved as to the balance of the 48/. if any shall remain, after deducting therefrom the appellant’s costs at Law, and in Equity, as well as in this Court; and if upon the adjustment of the account of the said 48/. against the said costs, any balance shall remain due to the appellant, in that case, the injunction to be perpetual as to the 48/.9 and the appellee decreed to pay such balance. (1)
Duval and Marshall, for the plaintiff in error.
Campbell, for the defendant.
JY. B. The arguments at the bar are omitted, being noticed much at large by the Court.

 Baker v. Glass, 6 Munf. 212.